## COLVARD v. THE STATE.

The provisions of the Civil Code, § 4639, that, " before any writ of certiorari shall issue," the applicant therefor shall comply with certain requirements as to the giving of a bond and furnishing evidence of his having paid all costs which may have accrued, have no application to a criminal prosecution.

Submitted March 16, — Decided April 6, 1903.

Certiorari.    Before Judge Reagan.    Monroe superior court. February 14, 1903.

*Persons & Persons,* for plaintiff in error.
*O. H. B. Bloodworth, solicitor-general,* contra.

SIMMONS, C. J.    The plaintiff in error was brought to trial in the city court of Forsyth, upon an accusation charging him with the offense of trespass, and the jury returned a verdict of guilty. He thereupon applied to the superior court for a writ of certiorari. On the hearing of the case in that court, a motion was made "to dismiss the certiorari, for non-compliance with the statutes in regard to carrying cases to the superior court by writ of certiorari." This motion was sustained, and his honor passed an order which recited that the case was "dismissed on the ground that no certificate of the payment of costs, or affidavit in lieu thereof, appears to have been made before the writ of certiorari issued, as provided by the statute." To this judgment of dismissal the accused excepted. On the argument here, counsel called our attention to the fact that ·

the act of December 16, 1897, establishing the city court of For-
syth (Acts of 1897, p. 471), contained no special provision with
regard to carrying cases by writ of certiorari from that court to the
superior court; that section 765 of the Penal Code related exclu-
sively to the practice to be observed in applying for a writ of cer-
tiorari to be directed to a county court; and that, accordingly, sec-
tions 4638 and 4639 of the Civil Code must be looked to as fur-
nishing the only guide touching the manner in which a case tried
in the city court of Forsyth could be taken by certiorari to the
superior court.   Section 4638 provides, in general terms, that "no
writ of certiorari shall be granted or issued, except to the court
of ordinary, unless the party applying for the same, his agent or
attorney, shall make and file with his petition" an affidavit to the
effect that his petition is not filed for the purpose of delay only;
that he believes he has good cause for certiorari, and that the facts
set forth in his petition are, to the best of his knowledge and be-
lief, true.   With the requirements of this section the accused fully
complied.   He did not, however, pay the costs which had accrued
in the city court, or file an affidavit setting forth the statement that,
owing to his poverty, he was unable to do so.   Whether or not his
failure in this respect should be regarded as fatal depends on the
question whether the provisions of sections 4639–4641 have any
application to a criminal case.   The first of these sections has ref-
erence to the giving of a bond, with good security, "conditioned to
pay the adverse party in the cause the eventual condemnation-
money, together with all future costs," and the procuring of "a cer-
tificate from the officer whose decision or judgment is the subject-
matter of complaint, that all costs which have accrued on the trial
below have been paid."    Section 4640 prescribes the manner in
which the security offered on the bond may be compelled to justify,
and the following section makes provision for the filing of a pau-
per's affidavit in the event the applicant shall be unable from pov-
erty "to pay the costs and give security."

    While this method for carrying cases by writ of certiorari to the
superior court can be literally followed in civil actions, it is not
adjusted to a criminal case, for the reasons pointed out by Mr. Jus-
tice Fish in *Mohrman* v. *Augusta*, 103 *Ga.* 841, wherein this court
held that:   "Section 4639 of the Civil Code applies exclusively to
civil cases."   There the precise point raised was whether or not it

was incumbent upon the accused, who had been in a recorder's court found guilty of violating a city ordinance, to give the bond and security for which that section makes provision; and the conclusion reached was that just stated  The reasoning upon which the decision in that case was rested applies with equal force to the suggestion that it was within legislative contemplation that the requirement as to the payment of costs should be held to apply to both civil and criminal cases.    There certainly is nothing to indicate a purpose to prescribe that while bond and security should be given in civil cases only, costs should be paid in all cases, whether civil or criminal.    That is to say, the General Assembly, in passing the act the provisions of which are now incorporated in the section of the code last above cited, either did or did not have in view criminal as well as civil cases; and, as was held in the *Mohrman* case, the language employed precludes the idea that criminal cases were in contemplation.    To whom could accrued costs in that class of cases be paid?    If to the officers of court, how could the accused proceed to recover from them the amount thus paid, in the event he should be finally acquitted?    Such costs are commonly included in the sentence imposed, if the accused be subjected to a fine, instead of punished by way of imprisonment; and clearly he can not be required to pay his fine as a condition precedent to suing out a writ of certiorari.    Again, if no fine be imposed, and his conviction is either set aside or he is compelled to serve out his sentence, what disposition is to be made of the costs exacted of him?    If he be finally declared innocent of the charge made against him, under what provision of law could he claim the right to have a judgment entered up against the State, as the "adverse party" to the case, for the costs he was required to pay in order to have his illegal conviction set aside?    The answer to these pertinent inquiries is not to be found by reference to the provisions of the Civil Code, § 4639, or to any statute of which we are aware.    It follows, we think, that there is no logical distinction to be drawn between this case and the *Mohrman* case.    Since the decision in that case was announced, the General Assembly has taken hold of the subject and straightened the matter out, so far as cases originating in a municipal police court are concerned, by declaring that an applicant for a writ of certiorari shall (unless unable from poverty to do so) furnish a bond, with an acceptable surety, payable to the municipal corpora-

tion, and "conditioned for the personal appearance of the defendant to abide the final order, judgment, or sentence of said court, or of the superior court," in his case; and that in the event he "is unable from his poverty to give said bond, and will make the same to appear by affidavit, the judge of the superior court shall, in granting the writ of certiorari, order a supersedeas, but the defendant shall not be set at liberty." See Acts of 1902, p. 105. This legislation would seem to indicate an unwillingness on the part of the members of the General Assembly to require the payment of costs in this class of cases as a condition precedent to securing a writ of certiorari. The scheme of that act is admirable, since it fully meets the exigencies which arise in such cases, and accomplishes this purpose without imposing upon the accused the unnecessary hardship of paying accrued costs or making affidavit as to his inability from poverty to do so. Indeed, the legislature might well provide a similar method of procedure to be followed in criminal cases originating in other courts of inferior jurisdiction whose judgments are reviewable in the superior court by writ of certiorari. As the law now stands, we are firmly of the opinion that one found guilty of the commission of a criminal offense can not, if convicted in a court such as the city court of Forsyth, be legally called upon either to pay costs or furnish a bond of any kind, if he elects to carry his case by certiorari to the superior court.

*Judgment reversed. By five Justices.*